# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| ABSALON S. VELASCO, SAY P. VELASCO, and GARRY S. VELASCO, <br><br> Plaintiffs, <br><br> vs. <br><br> SECURITY NATIONAL MORTGAGE COMPANY DBA SECURITY NATIONAL MORTGAGE COMPANY, INC., BANK OF AMERICA, MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC, BAC HOME LOANS SERVICING, LP and DOES 1 through 20 inclusive, <br><br> Defendants. | CV. NO.  10-00239 DAE-KSC |

## ORDER: (1) GRANTING MOTION TO DISMISS COMPLAINT; (2) GRANTING MOTION FOR JOINDER; AND (3) DISMISSING THE COMPLAINT AS TO ALL DEFENDANTS WITHOUT PREJUDICE

On May 23, 2011, the Court heard BAC, BOA, and MERS' Motion to Dismiss.  The Court also heard SNMC's Motion for Joinder.  James H. Fosbinder, Esq., appeared at the hearing on behalf of Plaintiffs Absalon S. Velasco, Say P. Velasco, and Garry S. Velasco (collectively, "Plaintiffs"); Patricia J. McHenry,

Esq., appeared at the hearing on behalf of Defendants BAC Home Loans Servicing, LP ("BAC"), Bank of America ("BOA"), and Mortgage Electronic Registration Systems, Inc. ("MERS"); Jonathan Lai, Esq., appeared on behalf of Defendant Security National Mortgage Company's ("SNMC"). After reviewing the motions and the supporting and opposing memoranda, the Court GRANTS the Motion to Dismiss (Doc. # 34) and Motion for Joinder (Doc. # 38).

## BACKGROUND

On April 23, 2010, Plaintiffs Absalon S. Velasco, Say P. Velasco, and Garry S. Velasco (collectively, "Plaintiffs") filed a Complaint in this Court against Defendants Security National Mortgage Company dba Security National Mortgage Company, Inc. ("Security"), Bank of America ("BOA"), Mortgage Electronic Registration Systems, Inc. ("MERS"), BAC Home Loans Servicing, LP ("BAC"), and Does 1–20 (collectively, "Defendants"), alleging that Plaintiffs had been lured into a predatory mortgage loan. ("Compl.," Doc # 1.) On February 11, 2011, the Plaintiffs filed a First Amended Complaint ("FAC"). Specifically, Plaintiffs' FAC alleges the following Counts:

- Count I: Violations of the Sherman/Clayton Anti-Trust Acts. (FAC ¶¶ 91–113.)

- Count II: Violations of the Hawaii Anti-Trust/Anti-Monopoly Acts. (Id. ¶¶ 114–118.)

- Count III: Civil Conspiracy. (Id. ¶¶ 119–123.)

- Count IV: Fraudulent Misrepresentation. (Id. ¶¶ 124–133.)

- Count V: Slander of Title. (Id. ¶¶ 134–139.)

- Count VI: Unfair and Deceptive Acts or Practice. (Id. ¶¶ 140–152.)

- Count VII: Violations of Federal Truth-in-Lending Act ("TILA"). (Id. ¶¶ 153–156.)

- Count VIII: Breach of Fiduciary Duty. (Id. ¶¶ 157–165.)

- Count IX: Unconscionability. (Id. ¶¶ 166–174.)

- Count X[1]: Mistake. (Id. ¶¶ 175–176.)

- Count XI: Unjust Enrichment. (Id. ¶¶ 177–181.)

- Count XII: Intentional Infliction of Emotional Distress. (Id. ¶¶ 182–185.)

- Count XIII: Breach of the Covenant of Good Faith and Fair Dealing. (Id. ¶¶ 186–188.)

_____

[1] The FAC numbers this count as Count IX, although it is in actuality the tenth cause of action alleged by Plaintiffs.

- <u>Count XIV</u>: Complaint to Quiet Title.  (<u>Id.</u> ¶¶ 189–194.)

- <u>Count XV</u>:  Injunctive Relief.  (<u>Id.</u> ¶¶ 195–200.)

Plaintiffs reside in the State of Hawaii.  (<u>Id.</u> ¶ 5.)  Plaintiffs executed a note dated December 21, 2007, which is secured by a mortgage that was recorded in the Bureau of Conveyances on December 28, 2007.[2]  (<u>Id.</u> ¶ 9; <u>id.</u> Ex. A.)  The real property at issue in this loan transaction is located at 534 Kuikahi Drive, Wailuku, Maui, Hawaii 96793 (the "Subject Property").  (Id. ¶ 7.)  Defendant Security is the originating lender on the mortgage loan.  (<u>Id.</u>)

Plaintiffs allege that Defendants perpetuated a fraud by creating "false and inflated property appraisals" and then induced "Plaintiffs and other borrowers into ever-larger loans on increasingly risky terms."  (<u>Id.</u> ¶ 43.)  Plaintiffs also contend that Defendants were not provided with "a signed and dated copy" of their loan application  (<u>Id.</u> ¶ 56.)  Finally, Plaintiffs assert that "Defendants failed to

---

[2] Defendants BAC and BOA submitted a copy of the subject mortgage as Exhibit B to their first Motion to Dismiss.  "[A] district court ruling on a motion to dismiss may consider documents 'whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the [plaintiff's] pleading.'"  <u>Parrino v. FHP, Inc</u>., 146 F.3d 699, 705 (9th Cir. 1998) (quoting <u>Branch v. Tunnell</u>, 14 F.3d 449, 454 (9th Cir. 1994)); <u>see also</u> <u>Lee v. City of L.A.</u>, 250 F.3d 668, 688 (9th Cir. 2001).  In the instant case, Plaintiffs' entire Complaint revolves around the subject mortgage.  The mortgage is clearly essential to the Complaint, and neither party disputes its authenticity.  Accordingly, it is appropriate for the Court to consider the mortgage itself when ruling on the Motion to Dismiss.

inform and explain to Plaintiffs that they would disclose confidential personal and financial information to other banks or lending institutions or investors who sought to purchase bundled loans . . . ." (Id. ¶ 86.)

On September 16, 2010, Defendants BAC and BOA filed their first Motion to Dismiss, or in the Alternative, for a More Definite Statement ("First Motion"). (Doc. # 12.) On January 13, 2011, the Court granted the First Motion and provided Plaintiffs with leave to amend ("January Order"). ("January Order," Doc. # 31.) On February 11, 2011, Plaintiffs filed their FAC. (Doc. # 32.) On February 25, 2011, BAC, BOA, and MERS filed the instant Motion to Dismiss. ("MD," Doc. # 34.) On April 15, 2011, Plaintiffs filed their Opposition. ("MD Opp'n," Doc. # 37.) On April 19, 2011, SNMC filed their Motion for Joinder. ("MJ," Doc. # 38.) On April 25, 2011, BAC, BOA, and MERS filed their Reply. ("MD Reply," Doc. # 40.)

## STANDARD OF REVIEW

I.      Federal Rule of Civil Procedure 12(b)(6)

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure ("Rule"), a motion to dismiss will be granted where the plaintiff fails to state a claim upon which relief can be granted. Review is limited to the contents of the complaint. See Clegg v. Cult Awareness Network, 18 F.3d 752, 754 (9th Cir.

1994).  A complaint may be dismissed as a matter of law for one of two reasons: "(1) lack of a cognizable legal theory, or (2) insufficient facts under a cognizable legal claim."  Robertson v. Dean Witter Reynolds, Inc., 749 F.2d 530, 534 (9th Cir. 1984) (citation omitted).  Allegations of fact in the complaint must be taken as true and construed in the light most favorable to the plaintiff.  See Livid Holdings Ltd. v. Salomon Smith Barney, Inc., 416 F.3d 940, 946 (9th Cir. 2005).

A complaint need not include detailed facts to survive a Rule 12(b)(6) motion to dismiss.  See Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555–56 (2007).  In providing grounds for relief, however, a plaintiff must do more than recite the formulaic elements of a cause of action.  See id. at 556–57; see also McGlinchy v. Shell Chem. Co., 845 F.2d 802, 810 (9th Cir. 1988) ("[C]onclusory allegations without more are insufficient to defeat a motion to dismiss for failure to state a claim.") (citation omitted).  "The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions," and courts "are not bound to accept as true a legal conclusion couched as a factual allegation."  Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (internal quotations and citations omitted).  Thus, "bare assertions amounting to nothing more than a formulaic recitation of the elements" of a claim "are not entitled to an assumption of truth."  Moss v. U.S. Secret Service, 572 F.3d 962, 969 (9th Cir. 2009) ("[T]he

6

non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief.") (internal quotations and citations omitted).

A court looks at whether the facts in the complaint sufficiently state a "plausible" ground for relief. See Twombly, 550 U.S. at 570. A plaintiff must include enough facts to raise a reasonable expectation that discovery will reveal evidence and may not just provide a speculation of a right to relief. Id. at 586. When a complaint fails to adequately state a claim, such deficiency should be "exposed at the point of minimum expenditure of time and money by the parties and the court." Id. at 558 (citation omitted). If a court dismisses the complaint or portions thereof, it must consider whether to grant leave to amend. Lopez v. Smith, 203 F.3d 1122, 1130 (9th Cir. 2000) (finding that leave to amend should be granted "if it appears at all possible that the plaintiff can correct the defect") (internal quotations and citations omitted).

## II.    Federal Rule of Civil Procedure 9(b)

Federal Rule of Civil Procedure 9(b) requires that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). Under Ninth Circuit law, "Rule 9(b) requires particularized allegations of the circumstances constituting fraud." In re

GlenFed, Inc. Sec. Litig., 42 F.3d 1541, 1547–48 (9th Cir. 1994) (en banc),

superseded on other grounds by 15 U.S.C. § 78u-4.

In their pleadings, plaintiffs must include the time, place, and nature

of the alleged fraud; "mere conclusory allegations of fraud are insufficient" to

satisfy this requirement.  Id. at 1548 (quoting Moore v. Kayport Package Express,

Inc., 885 F.2d 531, 540 (9th Cir. 1989)).  "[T]he circumstances constituting the

alleged fraud [must] 'be specific enough to give defendants notice of the particular

misconduct . . . so that they can defend against the charge and not just deny that

they have done anything wrong.'"  Kearns v. Ford Motor Co., 567 F.3d 1120, 1124

(9th Cir. 2009) (quoting Bly-Magee v. California, 236 F.3d 10104, 1019 (9th Cir.

2001)); see also Moore, 885 F.2d at 540 (finding that Rule 9(b) requires a plaintiff

to attribute particular fraudulent statements or acts to individual defendants).

However, "[m]alice, intent, knowledge, and other conditions of a person's mind

may be alleged generally."  Fed. R. Civ. P. 9(b); see also In re GlenFed, Inc. Sec.

Litig., 42 F.3d at 1547 ("We conclude that plaintiffs may aver scienter . . . simply

by saying that scienter existed."); Walling v. Beverly Enter., 476 F.2d 393, 397

(9th Cir. 1973) (finding that Rule 9(b) "only requires the identification of the

circumstances constituting fraud so that the defendant can prepare an adequate

answer from the allegations" (citations omitted)).

A motion to dismiss for failure to plead with particularity is the functional equivalent of a motion to dismiss under Rule 12(b)(6) for failure to state a claim. <u>Vess v. Ciba-Geigy Corp. USA</u>, 317 F.3d 1097, 1107 (9th Cir. 2003). In considering a motion to dismiss, the court is not deciding the issue of "whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." <u>Scheuer v. Rhodes</u>, 416 U.S. 232, 236 (1974) <u>overruled on other grounds by</u> <u>Davis v. Scherer</u>, 468 U.S. 183 (1984).

DISCUSSION

For the reasons set forth below, the Court concludes that the Motion to Dismiss and Motion for Joinder should be granted. As a preliminary matter, Defendants argue that Plaintiffs' new claims should be stricken because the Court only granted leave to cure deficiencies with respect to certain claims. The Court cannot agree. In its January Order the Court stated:

> Plaintiffs are advised that the amended complaint must clearly state how each of the named defendants have injured them, and it must also clearly identify the statutory provisions under which Plaintiffs' claims are brought consistent with this Order.

(January Order at 30.) The Court did not circumscribe which claims could be amended and did not preclude the Plaintiffs from raising new claims. Accordingly the Court will not now strike Plaintiffs' new claims.

I.      Counts I: Violation of the Sherman/Clayton Antitrust Acts

In Count I, Plaintiffs allege violations of Sections 1 and 2 of the Sherman Antitrust Act and seek relief for these violations pursuant to Section 4 of the Clayton Antitrust Act.  (FAC ¶ 109, 111.)  Because Plaintiffs have failed to plead these counts with sufficient specificity, the Court grants Defendants' Motion to Dismiss with respect to these counts.

Section 1 of the Sherman Act prohibits "[e]very contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations."  15 U.S.C. § 1.  To state a claim under Section 1, "'claimants must plead not just ultimate facts (such as a conspiracy), but evidentiary facts which, if true, will prove: (1) a contract, combination or conspiracy among two or more persons or distinct business entities; (2) by which the persons or entities intended to harm or restrain trade or commerce . . . (3) which actually injures competition.'"  William O. Gilley Enters., Inc. v. Atlantic Richfield Co., 588 F.3d 659, 669 (9th Cir. 2009) (per curiam) (quoting Kendall v. Visa U.S.A., Inc., 518 F.3d 1042, 1047 (9th Cir. 2008)); see also Coal. for ICANN Transparency, Inc. v. VeriSign, Inc., 611 F.3d 495, 501–02 (9th Cir. 2010) (same).

Section 2 of the Sherman Act makes it illegal to "monopolize, or attempt to monopolize, or combine or conspire with any other person or persons, to monopolize any part of the trade or commerce among the several States, or with foreign nations." 15 U.S.C. § 2. Monopolization and attempted monopolization are the two traditional claims asserted under Section 2. To state a claim for monopolization, the plaintiff must sufficiently allege: "'(1) the possession of monopoly power in the relevant market and (2) the willful acquisition or maintenance of that power as distinguished from growth or development as a consequence of a superior product, business acumen, or historic accident.'" John Doe 1 v. Abbott Labs., 571 F.3d 930, 933 n.3 (9th Cir. 2009) (quoting Eastman Kodak Co. v. Image Technical Servs., Inc., 504 U.S. 451, 481 (1992)); Alaska Airlines v. United Airlines, Inc., 948 F.2d 536, 540–41 (9th Cir. 1991) (same); see also MetroNet Servs. Corp. v. Qwest Corp., 383 F.3d 1124, 1130 (9th Cir. 2004) (listing the elements of a monopolization claim).

Sections 1 and 2 of the Sherman Act thus "focus on different problems." See Alaska Airlines v. United Airlines, Inc., 948 F.2d 536, 540–41 (9th Cir. 1991). Whereas "concerted conduct is subject to sanction [under Section 1] if it merely restrains trade, unilateral conduct is subject to sanction [under Section 2] only if it either actually monopolizes or threatens

monopolization." Id. at 541 (citing Copperweld Corp. v. Independence Tube Corp., 467 U.S. 752, 767–69 (1984)); see also Am. Needle, Inc. v. Nat'l Football League, 130 S. Ct. 2201, 2208–09 (2010) (stating that although Section 1 applies only to concerted action that restrains trade, Section 2 covers both concerted and independent action, but only if that action monopolizes or threatens actual monopolization, a category which is narrower than restraint of trade).

Regardless of the provision purportedly violated, an antitrust plaintiff must demonstrate that the injury in question is "injury of the type the antitrust laws were intended to prevent." Brunswick, 429 U.S. at 489. Indeed, the antitrust laws "were enacted for 'the protection of competition, not competitors.'" Id. at 488 (quoting Brown, 370 U.S. at 320); see also Cascade Health Solutions, 515 F.3d at 501–02 (recognizing the Supreme Court's "long and consistent adherence to the principle that the antitrust laws protect the process of competition, and not the pursuits of any particular competitor").

A plaintiff seeking damages pursuant to Section 4 of the Clayton Act must show causal antitrust injury, and to obtain injunctive relief pursuant to Section 16 of the Clayton Act, a plaintiff must allege threatened antitrust injury.[3]

---

[3] Section 4 of the Clayton Act provides treble damages to "any person who shall be injured in his business or property by reason of anything forbidden in the
(continued...)

Cargill, 479 U.S. at 109–13.  The purpose of the antitrust injury requirement is to "ensure[] that the harm claimed by the plaintiff corresponds to the rationale for finding a violation of the antitrust laws in the first place, and it prevents losses that stem from competition from supporting suits by private plaintiffs for either damages or equitable relief."  Atlantic Richfield Co. v. USA Petroleum, Inc., 495 U.S. 328, 342 (1990).  As such, "[t]o show antitrust injury, a plaintiff must prove that his loss flows from an anticompetitive aspect or effect of the defendant's behavior [because] it is inimical to the antitrust laws to award damages for losses stemming from acts that do not hurt competition."  Rebel Oil Co., Inc. v. Atlantic Richfield Co., 51 F.3d 1421, 1433 (9th Cir. 1995) (citing Atlantic Richfield, 495 U.S. at 334); see also Cascade Health Solutions, 515 F.3d at 902 ("'Plaintiffs must prove antitrust injury, which is to say injury of the type the antitrust laws were intended to prevent and that flows from that which makes defendants' acts unlawful.  The injury should reflect the anticompetitive effect either of the violation or of anticompetitive acts made possible by the violation.'") (quoting Brunswick, 429 U.S. at 489).

---

[3](...continued)
antitrust laws."  15 U.S.C. § 15.  Section 16 of the Clayton Act provides that "[a]ny person, firm, corporation, or association shall be entitled to sue for and have injunctive relief . . . against threatened loss or damage by a violation of the antitrust laws."  15 U.S.C. § 26.

Plaintiffs have failed to adequately allege causal antitrust injury and Count I therefore fails. The crux of Defendants' argument is that BOA, and through its subsidiary BAC, as well as "five other large private banking institutions within the United States" agreed to establish a scheme "by which they would and did set up a private system of recording interests." (FAC ¶ 92.) Subsequently, these banks "used their combined market power in the financial industry to take control of the market for private securitization of mortgages." (Id. ¶ 93.) As a result of this conduct, "Defendants or their predecessors in interest have engaged in predatory conduct or anticompetitive conduct in an attempt to monopolize the mortgage lending and servicing market, intended at all times relevant herein to control the mortgage lending prices and practices, and to destroy competition." (Id. ¶ 110.) The FAC is utterly devoid of any factual allegations which support these contentions. For instance, there is no explanation or allegations to how these banks "used their combined market power in the financial industry to take control of the market." Nor is there any allegation, beyond conclusory statements, that the banks engaged in any sort of anticompetitive conduct. Without sufficiently alleging antitrust injury, this count of the Complaint cannot survive. Accordingly the Court **GRANTS** Defendants' Motion to Dismiss with respect to Count I of the complaint.

II.     <u>Count II: Violation of the Hawaii Antitrust and Anti-Monopoly Acts</u>

Plaintiffs, relying on their factual allegations with respect to Count I allege a violation the Hawaii Monopolization Act, Hawaii Revised Statutes § 480-9.  (TAC ¶ 115.)  The act provides that "[n]o person shall monopolize, or attempt to monopolize, or combine or conspire with any other person to monopolize any part of the trade or commerce in any commodity in any section of the State."  Haw. Rev. Stat. § 480-9.

The close relationship between federal antitrust law and Hawaii antitrust law has long been established.  <u>See, e.g.</u>, <u>Robert's Hawaii Sch. Bus v. Laupahoehoe Transp. Co., Inc.</u>, 982 P.2d 853, 881 n.29 (Haw. 1999) (noting the similarities between Section 2 of the Sherman Antitrust Act and Haw. Rev. Stat. § 480-9.)  Indeed, the "[l]egislative history of Hawaii's antitrust law clearly indicates that the state laws are to be interpreted and construed in harmony with analogous federal antitrust laws."  <u>Island Tobacco Co., Ltd. v. R. J. Reynolds Indus., Inc.</u>, 513 F. Supp. 726, 738 (D. Haw. 1981).  Similar to federal law, therefore, Hawaii courts require plaintiffs in antitrust proceedings to plead the "nature of the competition" to "ensure that the injury results from a competition-reducing aspect of the defendant's behavior."  <u>Davis v. Four Seasons Hotel Ltd.</u>, 228 P.3d 303, 325 (Haw. 2010) (citing and relying on federal law).  Thus,

Plaintiffs' failure to sufficiently allege any anticompetitive conduct as discussed with respect to Count I is applicable to Count II as well. The Court therefore **GRANTS** Defendants' Motion with respect to Count II.

III.    Count IV: Fraudulent Misrepresentation

The Fourth Count alleges that "Defendants or their predecessors in interest knowingly and intentionally concealed material information from Plaintiffs which were required by federal statutes and regulations to be disclosed to the Plaintiffs both before and at the time of closing." (FAC ¶ 125.) Plaintiffs contend that had they "known of the falsity of Defendants' representations or known of the omissions of material fact, Plaintiffs would not have entered into the transactions which are the subject of this loan. (Id. ¶ 129.) As a result of these alleged fraudulent misrepresentation, Plaintiffs claim to be "entitled to recission [sic] of the subject Note and Mortgage, and damages in such amounts as shall be proven at the time of trial." (Id. ¶ 131.)

The Court finds that Plaintiffs' allegations are insufficient to satisfy the more rigorous pleading requirements of Rule 9 that apply to allegations of fraud or mistake. See Fed. R. Civ. P. 9(b) (requiring a party to state with particularity the circumstances constituting fraud or mistake). The claim must "be accompanied by the 'who, what, when, where, and how' of the misconduct

16

charged." Kearns v. Ford Motor Co., 567 F.3d 1120 (9th Cir. 2009) (internal

citation and quotations omitted).  A plaintiff "must state the time, place and

specific content of the false representations as well as the identities of

the parties to the misrepresentation." Alan Neuman Productions, Inc. v. Albright,

862 F.2d 1388, 1393 (9th Cir. 1988).

 With the exception of Paragraph 127, the allegations of misconduct

related to this count are over broad and general in nature.  Specifically, Plaintiffs'

allegations do not distinguish between Defendants and do not detail what specific

conduct resulted in the fraudulent misrepresentation to survive Iqbal-Twombly.

(See, e.g., FAC ¶¶ 125, 126.)

 Paragraph 127, the lone paragraph that provides some clarity as to the

conduct of which Plaintiffs complain, is still insufficient in light of Rule 9.

Plaintiffs allege that MERS falsely represented it had authority to assign SNMC's

interest or that MERS falsely represented that it conveyed SNMC's interest to

BAC.  Plaintiffs further allege that BAC falsely represented that SNMC had

transferred its interest to BAC.  (Id. ¶ 127.)  Plaintiffs even provide a date on which

these alleged misrepresentations took place.   Plaintiffs, however, do not specify

who specifically made these misrepresentations or how material facts were

concealed from Plaintiffs.  Nor do Plaintiffs specify how these representations

were false.[4]  Without more, the Court cannot say that Plaintiffs have satisfied their

heightened pleading standard under Rule 9.

Accordingly, the Court **GRANTS** Defendants' Motion to Dismiss

with respect to Count IV.

IV.    Count V: Slander of Title

Count V of the complaint alleges Slander of Title.  Specifically,

Plaintiffs allege that "BAC willfully, wrongfully, without justification, and without

privilege caused to be recorded with the Hawaii Bureau of Conveyances, a

document purporting to be an Assignment of Mortgage . . . from [SNMC] to

BAC."  (FAC ¶ 135.)  This was allegedly motivated by "fraud and malice" because

"BAC knew that the assignment was false, because it knew that [SNMC] did not

have an interest in the Mortgage on the Subject Property . . . and nevertheless

caused an employee of BAC . . . make the Assignment to BAC."  (Id. ¶ 139.)

Slander of title  is "a tortious injury to property resulting from

unprivileged, false, malicious publication of disparaging statements regarding the

title to property owned by plaintiff, to plaintiff's damage."  Southcott v. Pioneer

_____

[4] The Court notes specifically that the bald assertion that MERS "did not
have the authority to convey  SNMC's interest as represented" is woefully
insufficient.  To the extent that Plaintiffs rely on Paragraphs 77–82 to allege falsity,
the Court is not persuaded as discussed infra.

Title Co., 21 Cal. Rptr. 917, 919 (Cal. App. 1962) (citations omitted). "To establish slander of title at common law, a plaintiff must show falsity, malice, and special damages, i.e., that the defendant maliciously published false statements that disparaged a plaintiff's right in property, causing special damages." B & B Inv. Group v. Gitler, 581 N.W.2d 17, 20 (Mich. App. 1998); see also Manhattan Loft, LLC v. Mercury Liquors, Inc., 93 Ca. Rptr. 3d 457, 464 (Cal. App. 2009) (establishing elements as "(1) a publication, (2) which is without privilege or justification, (3) which is false, and (4) which causes direct and immediate pecuniary loss.").

Plaintiffs have once more run afoul of Twombly-Iqbal. There is no allegation as to why the assignment was false aside from conclusory allegations. (See, e.g., TAC ¶ 136 ("The Assignment was false, and caused doubt to be placed on the plaintiff's title to the Subject Property.").) Further the Court finds that Plaintiffs have insufficiently alleged that any false publication was done with malice. First, the Court notes again that, to the extent its malice claim is based on fraudulent conduct, Plaintiffs have failed to satisfy the heightened pleading standard of Rule 9. (See id. ¶ 139 ("The aforementioned recorded was motivated by fraud and malice." (emphasis added)).) A claim based on fraudulent conduct must "be accompanied by the 'who, what, when, where, and how' of the

misconduct charged." <u>Kearns</u>, 567 F.3d at 1120.  Plaintiffs have made no such showing.  In any event, having failed sufficiently to allege that the recording itself was false, it cannot be that Plaintiffs sufficiently alleged that BAC knew the assignment was false as suggested by the FAC.  (<u>See</u> FAC ¶ 139.)  Accordingly Count V cannot withstand Defendants' Motion to Dismiss.

        In Opposition, Plaintiffs point the Court to Paragraphs 77–82 as evidence that they "detailed the falsity of the Assignment."  (MD Opp'n at 23.) These paragraphs seem to allege that an individual named Mary Kist executed the Assignment of Mortgage to BAC as Vice President of MERS and also had authority to act on behalf of BAC.  (<u>See</u> FAC ¶¶ 77–78.)  The Plaintiffs then assert that Mary Kist was not an officer or employee of SNMC and as a result could not have assigned SNMC's interest.  (<u>Id.</u> ¶¶ 79–80.)  As a result, BAC and MERS must have known, according to Plaintiffs, that MERS had no authority to assign SNMC's interest.  (<u>Id.</u> ¶ 82.)  The Court simply does not follow how these allegations detail the falsity of the recording, especially considering MERS transferred its own right, title and interest in the mortgage and not SNMC's interest.  (<u>See</u> FAC, Ex. B. ("MERS solely as nominee for [SNMC] . . . does hereby transfer without recourse to [BAC] . . . all of its [MERS'] right, title and interest ain and to that certain mortgage . . . .").)  The Court will not here speculate

as to why else the Assignment might be false.  See Twombly, 550 U.S. at 555

("Factual allegations must be enough to raise a right to relief above the speculative

level.").  This count therefore fails as a matter of law and the Court **GRANTS**

Defendants' Motion to Dismiss with respect to Count V.

V.      Count VIII: Breach of Fiduciary Duty

          Plaintiffs allege that Defendants owed and breached to Plaintiffs a

fiduciary duty in connection with their loan.  (See FAC ¶¶ 54, 157–165.)

Defendants argue that they owed Plaintiffs no such duty.  (Mot. 14.)  Generally

there exists no fiduciary duty between borrowers and lenders.  Unless a special

relationship exists between a borrower and lender that elevates the lender's

responsibility, the standard "arms-length business relationship" applies.  Giles v.

General Motors Acceptance Corp., 494 F.3d 865, 883 (9th Cir. 2007); see also

Pension Trust Fund for Operation Engineers v. Federal Ins. Co., 307 F.3d 944, 954

(9th Cir. 2002).

          In the instant Complaint, Plaintiffs make no allegations suggesting

that their relationship to Defendants is anything other than an ordinary,

arms-length, lender-borrower relationship.  Simply stating that "[d]efendants owed

a fiduciary duty to Plaintiffs and breached that duty" is insufficient to establish the

existence of a fiduciary duty.  Thus Plaintiffs' unsubstantiated assertions in Count

VIII are meritless.  See Iqbal, 129 S. Ct. at 1949.  The Court therefore **GRANTS**

Defendants' Motion to Dismiss with respect to Count VIII.

VI.     Count III: Civil Conspiracy

Count III alleges a civil conspiracy.  Specifically, Plaintiffs allege that

"Defendants BAC . . . MERS . . . and the DOE Defendants agreed between and

among themselves to engage in the conspiracy to defraud for the common purpose

of accruing economic gains for themselves at the expense of and detriment to the

Plaintiff."  (FAC ¶ 121.)

This Count is dismissed because Hawaii does not recognize an

independent causes of action for "civil conspiracy"—such theories of potential

liability are derivative of other wrongs.[5]  See, e.g., Weinberg v. Mauch, 890 P.2d

277, 286 (Haw. 1995); Chung v. McCabe Hamilton & Renny Co., 128 P.3d 833,

843 (Haw. 2006).  Yet, as explained above, Plaintiffs have failed to allege an

underlying tort for fraud, slander, or breach of fiduciary duty.  Further, to the

extent that this count is premised at least in part on fraud, Plaintiffs must meet the

heightened pleading requirements of Rule 9(b) in alleging a conspiracy.  See

Swartz v. KPMG LLP, 476 F.3d 756, 765 (9th Cir. 2007) ("Rule 9(b) imposes

_____

[5] In Opposition, Plaintiffs acknowledge this and rely on their allegations of
fraudulent misrepresentation and slander of title.  (Opp'n at 29.)  As discussed,
however, these claims fail.

heightened pleading requirements where the object of the conspiracy is fraudulent." (citation and internal quotations omitted)).  Plaintiffs have failed to do so.

The Court therefore GRANTS Defendants' Motion to Dismiss with respect to Count III.

VII.    Count VI: Unfair and Deceptive Acts or Practices

Plaintiffs claim that Defendants engaged in unfair or deceptive acts and practices ("UDAP") in violation of HRS §§ 480-2(a) and 481A-3.  (FAC ¶¶ 140–152.)

Hawaii Revised Statute section 480-2(a) provides that "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are unlawful."  Haw. Rev. Stat. § 480-2(a).  "Two distinct causes of action have emerged under [section] 480-2(a): (1) claims alleging unfair methods of competition; and (2) claims alleging unfair or deceptive acts or practices."[6] Haw. Med. Ass'n v. Haw. Med. Serv. Ass'n, Inc., 148 P.3d 1179,

_____

[6] Although "[a]ny person" may bring an action for unfair methods of competition in violation of section 480-2, only consumers, the attorney general, or the director of the office of consumer protection may bring an action for unfair or deceptive acts or practices in violation of section 480-2.  Haw. Rev. Stat. § 480-2(d), (e); see also Davis v. Four Seasons Hotel, Ltd., 228 P.3d 303, 307 (Haw. 2010).  A "consumer" is a "natural person who, primarily for personal, family, or
(continued...)

1207 (Haw. 2006); see also Star Markets, Ltd. v. Texaco, Inc., 945 F. Supp. 1344, 1346 (D. Haw. 1996). HRS § 481A-3 similarly prohibits "deceptive trade practice[s]."

Plaintiffs contend that Defendants violated these statutes by: (1) targeting financially unsophisticated and otherwise vulnerable consumers for inappropriate credit products; (2) failing to adequately disclose the true costs and risks of the subject loan and its inappropriateness for Plaintiff; (3) failing to disclose that lender approved the subject loan based on financial documents required by Defendants such as tax returns and pay stubs; (4) falsely representing or failing to fully and completely disclose the amounts Plaintiffs had to pay; (5) issuing a defective mortgage loan; and (6) entering into the public record a materially false document. (FAC ¶ 145.)

Plaintiffs have again failed to allege sufficiently this count of the Complaint. Plaintiffs have alleged no facts which suggest that any of the Defendants were targeting financially unsophisticated or otherwise vulnerable consumers. Nor have Plaintiffs proffered facts with respect to Defendants' failure

---

[6](...continued)
household purposes, purchases, attempts to purchase, or is solicited to purchase goods or services or who commits money, property, or services in a personal investment." Haw. Rev. Stat. § 480-1.

to adequately disclose "the true costs and risks of the subject loan."[7] There are no

factual allegations which suggest that the lender failed to disclose that it approved

loans based on certain documents.

Plaintiffs' allegation that Defendants falsely represented or failed to

fully and completely disclose the amount Plaintiffs were required to pay is also

insufficient. This is a fraudulent allegation and Plaintiffs have failed to satisfy the

"who, what, where, when, and how" requirement of Rule 9(b). <u>Kearns</u>, 567 F.3d at

1120.

As to the final two assertions, there is no factual support for the

premise that Defendants created a defective mortgage loan or loans that resulted in

little net economic benefit to Plaintiffs,[8] or that a materially false document

purporting to convey an interest was recorded.[9]

In sum, there is simply no factual premise or basis alleged in the

complaint that supports Plaintiffs' UDAP claim. Plaintiffs have utterly failed to

allege facts that could give rise to this cause of action. <u>See</u> <u>Iqbal</u>, 129 S. Ct. at

___

[7] Indeed, it is unclear to this court what Plaintiffs mean by "true costs and
risks" of the subject loan.

[8] Indeed, this seems a particularly preposterous assertion as Plaintiffs
received a <u>house</u> in exchange for signing the Note and Mortgage.

[9] For the reasons discussed <u>supra</u>, the Court is not persuaded that Plaintiffs
have sufficiently alleged the falsity of the recording.

1949 ("[A Complaint] demands more than an unadorned, the

defendant-unlawfully-harmed-me accusation."); <u>Twombly</u>, 550 U.S. at 555

("Factual allegations must be enough to raise a right to relief above the speculative

level."). The Court therefore **GRANTS** Defendants' Motion to Dismiss with

Respect to Count VI.

VIII. <u>Count IX Unconscionability</u>

      Count IX asserts that "the terms and conditions of the Note and

Mortgage are unconscionable, and Plaintiffs are entitled to rescission, damages,

repayment, reimbursement or indemnification of all monies that were paid and

other claims in such amounts as shall be proven at the time of trial. (FAC ¶ 174.)

      "Unconscionability" is generally a defense to the enforcement of a

contract, and is not a proper claim for affirmative relief. <u>See, e.g.</u>, <u>Carey v.</u>

<u>Lincoln Loan Co.</u>, 125 P.3d 814, 829 (Or. App. 2005) ("[U]nconscionability is not

a basis for a separate claim for relief.") To the extent that unconscionability can be

addressed affirmatively as a part of a distinct cause of action, such a claim exists

where "the <u>clauses</u> are so one-sided as to be unconscionable under the

circumstances existing at the time of the making of the contract . . . ." <u>Lews v.</u>

<u>Lewin</u>, 748 P.2d 1362, 1366 (Haw. 1988) (emphasis added and citations omitted).

Here, Plaintiffs' allegations fail to address any contract terms between Plaintiffs and Defendants, and instead, addresses Defendants' alleged conduct generally. These allegations do not speak to any unconscionable terms in the contract, nor are they limited to behavior that affected the circumstances under which the contract was made. For this reason, Plaintiffs' contentions in Count IV fail to state a claim for unconscionability. Accordingly the Court **GRANTS** Defendants' Motion to Dismiss with respect to Count IX.

IX.     Count XI: Unjust Enrichment

Plaintiffs next allege that they are entitled to unjust enrichment. Plaintiffs specifically claim "Defendants BAC and BOA have been unjustly enriched at the expense of the Plaintiffs and maintenance of the enrichment would be contrary to the rules and principles of equity." (TAC ¶ 181.)

To prevail on an unjust enrichment claim, a plaintiff must show that: 1) it has conferred a benefit upon the defendant, and 2) that the retention of the benefit was unjust. Wadsworth v. KSL Grant Wailea Resort, Inc., ---F. Supp. 2d ----, No. 08-00527, 2010 WL 5146521, at *11 (D. Haw. December 10, 2010).

As a general rule, "[a]n action for unjust enrichment cannot lie in the face of an express contract." Porter v. Hu, 169 P.3d 994 (Haw. App. 2007); see also Goodwin v. Executive Trustee Servs., LLC, 680 F. Supp. 2d 1244, 1255 (D.

Nev. 2010) ("An action 'based on a theory of unjust enrichment is not available when there is an express, written contract, because no agreement can be implied when there is an express agreement.'" (quoting <u>Leasepartners Corp. v. Robert L. Brooks Trust Dated November 12, 1975</u>, 942 P.2d 182, 187 (Nev. 1997))); <u>MacDonald v. Hayner</u>, 715 P.2d 519, 522 (Wash. App. 1986) ("A party to a valid express contract is bound by the provisions of that contract, and may not disregard the same and bring an action on an implied contract relating to the same matter, in contravention of the express contract.") Here both the Note and the Mortgage were express agreements that Plaintiffs executed in connection with their loan which govern the parties rights and obligations. Plaintiffs cannot, therefore, pursue an unjust enrichment claim.[10]

Accordingly the Court **GRANTS** Defendants' Motion to Dismiss Count XI.

X.     <u>Count XII: Intentional Infliction of Emotional Distress</u>

Plaintiffs also allege a cause of action for Intentional Infliction of Emotional Distress. Plaintiffs specifically contend that they "suffered lost sleep, constant worry, and grief from the loss of their property." (FAC ¶ 184.)

---

[10] Indeed, in their entire Opposition, Plaintiffs make <u>no</u> argument with respect to this Count.

"Under Hawaii law, the elements of IIED are '(1) that the act allegedly causing the harm was intentional or reckless, (2) that the act was outrageous, and (3) that the act caused (4) extreme emotional distress to another.'" Enoka v. AIG Haw. Ins. Co., 128 P.3d 850, 872 (Haw. 2006) (quoting Hac v. Univ. of Haw., 73 P.3d 46, 60–61 (Haw. 2003)). The Hawaii Supreme Court defines the term "outrageous" as conduct "'without just cause or excuse and beyond all bounds of decency.'" Enoka, 128 P.3d at 872 (quoting Lee v. Aiu, 936 P.2d 655, 670 n.12 (Haw. 1997)). "Moreover, 'extreme emotional distress' constitutes, inter alia, mental suffering, mental anguish, nervous shock, and other 'highly unpleasant mental reactions.'" Id. (quoting Hac, 73 P.3d at 60).

Plaintiffs fail to allege any facts to support an inference that Defendants acted in an intentional or reckless manner or that they engaged in outrageous conduct. Furthermore, Plaintiffs' allegation that they suffered "lost sleep, constant worry and grief," without more cannot withstand a motion to dismiss. Bogard v. Emp'rs Cas. Co., 164 Cal. App. 3d 602, 617 (Cal. App. 1985) ("Severe emotional distress means . . . emotional distress of such substantial quantity or enduring quality that no reasonable man in a civilized society should be expected to endure it.") Given that foreclosures happen regularly and that Plaintiffs' reaction to the foreclosure is typical of any individual who has had their

house foreclosed, reasonable men and women in civilization are often expected to

endure these hardships and the anxiety that follows.  Indeed, as the Restatement

Second of Torts, section 46, comment j, explains: "Complete emotional tranquility

is seldom attainable in this world, and some degree of transient . . . emotional

distress is a part of the price of living among people."  Without more, the Court

simply cannot conclude that the hardship alleged by Plaintiffs rises to the level of

Extreme Emotional Distress.

>    As a result the Court **GRANTS** Defendants' Motion to Dismiss with

respect Count XII.

XI.    Count XIII: Breach of the Covenant of Good Faith and Fair Dealing

>    Count XIII purports to state a claim for breach of the covenant of

good faith and fair dealing.  (FAC ¶¶ 186–88.)  Plaintiffs allege that as a result of

"Recording a knowingly false assignment of the Mortgage that Defendants knew

would impair the vendibility of the Subject Property to the detriment of Plaintiffs'

finances and credit rating, Defendants and their predecessors in interest breached

the covenant of good faith and fair dealing . . . ."  (Id. ¶ 187.)

>    This claim asserts the tort of "bad faith."  See Best Place v. Penn Am.

Ins. Co., 920 P.2d 334, 342 (Haw. 1996) (adopting tort of bad faith for breach of

implied covenant of good faith and fair dealing  in an insurance contract).

Although bad faith is an accepted tort where the plaintiff is a party to an insurance contract, the tort has not been recognized in Hawaii based upon a mortgage loan contract.  See Jou v. Nat'l Interstate Ins. Co. of Haw., 157 P.3d 561, 568 (Haw. App. 2007) (explaining that "the Hawaii Supreme Court emphasized that the tort of bad faith, as adopted in [Best Place] requires a contractual relationship between an insurer and an insured" (citations omitted)).

Moreover, although commercial contracts for "sale of goods" also contain an obligation of good faith in their performance and enforcement, this obligation does not create an independent cause of action.  See Stoebner Motors, Inc. v. Automobili Lamborghini S.P.A ., 459 F. Supp. 2d 1028, 1037–38 (D. Haw. 2006).  Hawaii courts have also noted that "[o]ther jurisdictions recognizing the tort of bad faith . . . limit such claims to the insurance context or situations involving special relationships characterized by elements of fiduciary responsibility, public interest, and adhesion."  Id. at 1037 (quoting Francis v. Lee Enters., 971 P.2d 707, 711 (Haw. 1999)). It is thus unlikely that Plaintiffs could recover for bad faith as alleged in Count XIII.

Importantly, even assuming a bad faith tort exists outside the insurance context, it is well-settled that a party cannot breach the covenant of good faith and fair dealing before a contract is formed.  See Indep. Order of Foresters v.

Donald, Lufkin & Jenrette, Inc., 157 F.3d 933, 941 (2d Cir.1998) ("[A]n implied covenant relates only to the performance under an extant contract, and not to any pre-contract conduct."). Hawaii follows this distinction. See Young v. Allstate Ins. Co., 198 P.3d 666, 690 (Haw. 2008) (indicating the covenant of good faith does not extend to activities occurring before consummation of an insurance contract). Thus, to the extent Count XIII's allegations concern pre-contract activities (failing to disclosure terms, failing to conduct proper underwriting, making an improper loan to Plaintiffs), Defendants cannot be liable for bad faith. See id.; see also Larson v. Homecomings Fin., LLC, 680 F. Supp. 2d 1230, 1237 (D. Nev. 2009) ("Because Plaintiffs' claim revolves entirely around alleged misrepresentations made before the [mortgage loan] contract was entered into, [the bad faith claim] fails as a matter of law.").

Further, to the extent Plaintiffs are attempting to assert bad faith in the performance of a contractual right to foreclose, "a court should not conclude that a foreclosure conducted in accordance with the terms of a deed of trust constitutes a breach of the implied covenant of good faith and fair dealing." Davenport v. Litton Loan Servicing, LP, 725 F. Supp. 2d 862, 884 (N.D. Cal. 2010) (citation omitted). "The covenant [of good faith] does not 'impose any affirmative duty of moderation

in the enforcement of legal rights.'"  Id.  (quoting Price v. Wells Fargo Bank, 261

Cal. Rptr. 735, 742 (1989)).

Finally, the Court is not convinced that Plaintiffs have pled this count

with sufficient particularity.  As discussed supra, Plaintiffs have not sufficiently

alleged the falsity of the Assignment, and, further, Plaintiffs certainly have not

sufficiently pled facts which suggests Defendants were aware of the alleged falsity

of the Assignment.

As a result, the Court **GRANTS** Defendants' Motion to Dismiss with

Respect to Count XIII.[11]

XII.    Count XV: Injunctive Relief

Count XV of the Complaint asserts a claim for injunctive relief to

prevent Defendants from foreclosing on the Subject Property.  (Compl. ¶¶ 54–55.)

Plaintiffs' request for injunctive relief appears to be a request for relief derivative

of their other claims, and not a standalone claim.  Because the Court finds that all

of Plaintiffs' claims should be dismissed, and because Plaintiffs fail to allege any

facts showing that they are entitled to this equitable remedy, the Court finds that

Plaintiffs' claim for injunctive relief should be dismissed as well.

-----

[11] Plaintiffs proffer no argument in opposition with respect to this Count

Accordingly, the Court GRANTS the Motion to Dismiss as to Plaintiffs' claim for injunctive relief.

XIII.  Remaining Claims and Dismissal without Prejudice

In their Opposition, Plaintiffs concede that their causes of action for TILA recision (Count VII), Mistake (Count X), Bad Faith (Count XIII), and Quiet Title (Count XIV) "are unlikely to prevail as written" given the recent order issued in Phillips v. Bank of America, No. 10-00551 JMS-KSC, 2011 WL 240813 (D. Haw. Jan. 21, 2011).  (Opp'n at 34.)  Plaintiffs therefore request leave to amend these claims and any others that the Court finds to be deficient.

Pursuant to Rule 15(a)(2), courts should "freely give leave [to amend] when justice so requires."  Further, "requests for leave should be granted with extreme liberality."  Moss v. U.S. Secret Service, 572 F.3d 962, 792 (9th Cir. 2009).  "Dismissal without leave to amend is improper unless it is clear . . . that the complaint could not be saved by an amendment."  Id.  "However, 'liberality in granting leave to amend is subject to several limitations.'"  Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., --- F.3d ---, Nos. 09-16181, 09-16607, 09-17710, 2011 WL 1053366, at *7 (9th Cir. Mar. 24, 2011) (quoting Ascon Props., Inc. v. Mobil Oil Co., 866 F.2d 1149, 1160 (9th Cir. 1989)).  "Those limitations include undue prejudice to the opposing party, bad faith by the movant, futility, and undue delay."

Id. (citing <u>Ascon Props</u>, 866 F.2d at 1160). "Further, '[t]he district court's discretion to deny leave to amend is particularly broad where plaintiff has previously amended the complaint.'" <u>Id.</u> (quoting <u>Ascon Props</u>, 866 F.2d at 1160).

The Court recognizes that it may be possible for Plaintiffs to state a claim if provided the opportunity to amend their Complaint. The Complaint is therefore **DISMISSED WITHOUT PREJUDICE** as against all Defendants in this action with leave to amend no later than thirty (30) days from the filing of this Order. Failure to do so and to cure the pleading deficiencies will result in dismissal of this action <u>with prejudice</u>. Plaintiffs are advised that the amended complaint <u>must clearly state</u> how each of the named defendants have injured them, and it must also <u>clearly identify</u> the statutory provisions under which Plaintiffs' claims are brought consistent with this Order.[12] In granting leave to amend the Court does not here limit Plaintiffs' amended pleading only to the causes of action presently contained in the Complaint—Plaintiffs may allege new theories of liability if they so choose.

---

[12] The Court also notes that this is Plaintiffs <u>second</u> opportunity to amend their complaint.

<u>CONCLUSION</u>

For these reasons the Court **GRANTS** the Motion to Dismiss and Motion for Joinder.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, May 24, 2011.



_____
David Alan Ezra
United States District Judge

<u>Velasco et al. v. Security National Mortgage Co. et al.</u>, Cv. No. 10-00239 DAE-KSC ORDER: (1) GRANTING MOTION TO DISMISS COMPLAINT; (2) GRANTING MOTION FOR JOINDER; AND (3) DISMISSING THE COMPLAINT AS TO ALL DEFENDANTS WITHOUT PREJUDICE