IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

ABSALON S. VELASCO, SAY P.   )    CV. NO. 10-00239 DAE KSC
VELASCO, and GARRY S.       )
VELASCO,                    )
                               )
        Plaintiffs,        )
                               )
   vs.                 )
                               )
SECURITY NATIONAL     )
MORTGAGE COMPANY DBA  )
SECURITY NATIONAL     )
MORTGAGE COMPANY, INC.,  )
BANK OF AMERICA,      )
MORTGAGE ELECTRONIC  )
REGISTRATION SYSTEMS, INC, )
BAC HOME LOANS SERVICING, )
LP and DOES 1 through 20    )
inclusive,                 )
                               )
        Defendants.      )
_____ )

ORDER: (1) GRANTING DEFENDANTS' MOTIONS TO DISMISS;
AND (2) DISMISSING WITH PREJUDICE PLAINTIFFS'
SECOND AMENDED COMPLAINT

On October 13, 2011, the Court heard Defendants BAC Home Loans

Servicing, LP ("BAC"), Bank of America ("BOA"), and Mortgage Electronic

Registration Systems, Inc.'s ("MERS") Motion to Dismiss (Doc. # 47) and

Defendant Security National Mortgage Company's ("Security") Motion to Dismiss

(Doc. # 48.).  James H. Fosbinder, Esq., appeared at the hearing on behalf of

Plaintiffs Absalon S. Velasco, Say P. Velasco, and Garry S. Velasco (collectively,

"Plaintiffs"); Patricia J. McHenry, Esq., appeared at the hearing on behalf of

Defendants BAC, BOA, and MERS; Michael C. Bird, Esq., appeared on behalf of

Defendant Security.  After reviewing the motions and the supporting and opposing

memoranda, the Court **GRANTS** Defendants' Motions to Dismiss and

**DISMISSES WITH PREJUDICE** Plaintiffs' Second Amended Complaint.

## BACKGROUND

Plaintiffs executed a note dated December 21, 2007, which is secured

by a mortgage that was recorded in the Bureau of Conveyances on December 28,

2007 ("Mortgage").[1]  ("SAC," Doc. # 45 Ex. A.)  The real property at issue in this

loan transaction is located at 534 Kuikahi Drive, Wailuku, Hawaii 96793 (the

"Subject Property").  (Id.)  Defendant Security is listed on the Mortgage as the

originating lender and MERS is listed as the mortgagee "acting solely as nominee

---

[1] Plaintiffs attached as exhibits to their Second Amended Complaint a copy
of the subject Mortgage, Assignment of Mortgage, and Notice of Foreclosure.
"When ruling on a motion to dismiss, [courts] may 'generally consider []
allegations contained in the pleadings, exhibits attached to the complaint, and
matters properly subject to judicial notice.'"  Colony Cove Properties, LLC v. City
of Carson, 640 F.3d 948, 955 (9th Cir. 2011) (quoting Outdoor Media Grp., Inc. v.
City of Beaumont, 506 F.3d 895, 899–900 (9th Cir. 2007)).  Accordingly, it is
appropriate for the Court to consider these documents when ruling on the Motion
to Dismiss.

for Lender and Lender's successors and assigns." (Id.)  On August 26, 2009,

MERS executed an assignment, which purports to transfer to BAC Home Loans

Servicing "all of its right, title and interest" in the Mortgage ("Assignment").

(SAC, Ex. B.)  This Assignment was recorded in the State of Hawaii Bureau of

Conveyances on January 12, 2010 as Document Number 2010-004727.  (Id.)  On

or about December 24, 2009, BAC recorded a Notice of Mortgagee's Intention to

Foreclose Under Power of Sale, which advised of BAC's intention to sell the

Subject Property.  (SAC, Ex. C.)

On April 23, 2010, Plaintiffs filed a Complaint in this Court against

Defendants Security, BOA, MERS, BAC, and Does 1–20 (collectively,

"Defendants"), alleging that Plaintiffs had been lured into a predatory mortgage

loan.  (Doc. # 1.)  On September 16, 2010, Defendants BAC and BOA filed a

Motion to Dismiss, or in the Alternative, for a More Definite Statement ("First

Motion").  (Doc. # 12.)  On January 13, 2011, the Court granted the First Motion

and dismissed the Complaint with leave to amend.  (Doc. # 31.)  On February 11,

2011, Plaintiffs filed a First Amended Complaint ("FAC").  (Doc. # 32.)  On

February 25, 2011, Defendants BAC, BOA, and MERS filed a Motion to Dismiss

the FAC ("Second Motion").  (Doc. # 34.)  Security filed a Motion for Joinder on

April 19, 2011.  (Doc. # 38.)  On May 24, 2011, the Court granted both the Second

Motion and the Motion for Joinder and dismissed the FAC with leave to amend. (Doc. # 44.) On June 9, 2011, Plaintiffs filed a Second Amended Complaint ("SAC"). (Doc. # 45.) Plaintiffs allege the following causes of action in the SAC:

- <u>Count I</u>: Slander of Title. (SAC ¶¶ 46–54.)

- <u>Count II</u>: Conspiracy to Slander Title. (SAC ¶¶ 55–63.)

- <u>Count III</u>: Unfair or Deceptive Acts and Practices. (SAC ¶¶ 64–72.)

- <u>Count IV</u>: Breach of Contract. (SAC ¶¶ 73–78.)

On June 28, 2011, BAC, BOA, and MERS filed the instant Motion to Dismiss the SAC. (Doc. # 47.) On June 29, 2011, Security filed a separate Motion to Dismiss the SAC. (Doc. # 48.) On August 22, 2011, Plaintiffs filed an Opposition to BAC, BOA, and MERS' Motion to Dismiss.[2] (Doc. # 62.) On August 30, 2011, BAC, BOA, and MERS filed a Reply in support of their Motion. (Doc. # 66.)

<u>STANDARD OF REVIEW</u>

I.    <u>Motion to Dismiss for Failure to State a Claim</u>

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure ("Rule"), a motion to dismiss will be granted where the plaintiff fails to state a claim upon which relief can be granted. A complaint may be dismissed as a matter

_____

[2]Plaintiffs have not filed an Opposition to Security's Motion to Dismiss.

4

of law for one of two reasons: "(1) lack of a cognizable legal theory, or (2) insufficient facts under a cognizable legal claim." Robertson v. Dean Witter Reynolds, Inc., 749 F.2d 530, 534 (9th Cir. 1984) (citation omitted). Allegations of fact in the complaint must be taken as true and construed in the light most favorable to the plaintiff. See Livid Holdings Ltd. v. Salomon Smith Barney, Inc., 416 F.3d 940, 946 (9th Cir. 2005).

A complaint need not include detailed facts to survive a Rule 12(b)(6) motion to dismiss. See Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555–56 (2007). However, in providing grounds for relief, a plaintiff must do more than recite the formulaic elements of a cause of action. See id. at 556–57; see also McGlinchy v. Shell Chem. Co., 845 F.2d 802, 810 (9th Cir. 1988) ("[C]onclusory allegations without more are insufficient to defeat a motion to dismiss for failure to state a claim.") (citation omitted). "The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions," and courts "are not bound to accept as true a legal conclusion couched as a factual allegation." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (internal quotations and citations omitted). Thus, "bare assertions amounting to nothing more than a formulaic recitation of the elements" of a claim "are not entitled to an assumption of truth." Moss v. U.S. Secret Service, 572 F.3d 962, 969 (9th Cir. 2009) ("[T]he

non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief.") (internal quotations and citations omitted).

A court looks at whether the facts in the complaint sufficiently state a "plausible" ground for relief.  See Twombly, 550 U.S. at 570.  A plaintiff must include enough facts to raise a reasonable expectation that discovery will reveal evidence and may not just provide a speculation of a right to relief.  Id. at 586. When a complaint fails to adequately state a claim, such deficiency should be "exposed at the point of minimum expenditure of time and money by the parties and the court."  Id. at 558 (citation omitted).  If a court dismisses the complaint or portions thereof, it must consider whether to grant leave to amend.  Lopez v. Smith, 203 F.3d 1122, 1130 (9th Cir. 2000) (finding that leave to amend should be granted "if it appears at all possible that the plaintiff can correct the defect") (internal quotations and citations omitted).

II.    Sua Sponte Dismissal

The court may dismiss a complaint pursuant Rule 12(b)(6) on its own motion.  See Omar v. Sea-Land Serv., Inc., 813 F.2d 986, 991 (9th Cir. 1987) ("A trial court may dismiss a claim sua sponte under [Rule] 12(b)(6).  Such a dismissal may be made without notice where the claimant cannot possibly win relief.");

6

Ricotta v. California, 4 F. Supp. 2d 961, 968 n.7 (S.D. Cal. 1998) ("The Court can dismiss a claim sua sponte for a Defendant who has not filed a motion to dismiss under Fed. R. Civ. P. 12(b)(6)."); see also Baker v. Dir., U.S. Parole Comm'n, 916 F.2d 725, 727 (D.C. Cir. 1990) (holding that district court may dismiss cases sua sponte pursuant to Rule 12(b)(6) without notice where plaintiff could not prevail on complaint as alleged). Additionally, a paid complaint that is "obviously frivolous" does not confer federal subject matter jurisdiction and may be dismissed sua sponte before service of process. Franklin v. Murphy, 745 F.2d 1221, 1227 n.6 (9th Cir. 1984); see also Fed. R. Civ. P. 12(h)(3); Grupo Dataflux v. Atlas Global Group, L.P., 541 U.S. 567, 593 (2004) ("[I]t is the obligation of both district court and counsel to be alert to jurisdictional requirements."); Branson v. Nott, 62 F.3d 287, 291 (9th Cir. 1995) ("[D]ismissal of Branson's complaint was required because the district court lacked subject matter jurisdiction . . . .").

A court may also sua sponte dismiss a complaint for failure to comply with Rule 8. Rule 8 mandates that a complaint include a "short and plain statement of the claim," Fed. R. Civ. P. 8(a)(2), and that each allegation "be simple, concise, and direct." Fed. R. Civ. P. 8(d)(1). A complaint that is so confusing that its "'true substance, if any, is well disguised'" may be dismissed sua sponte for failure to satisfy Rule 8. Hearns v. San Bernardino Police Dep't, 530 F.3d 1124, 1131 (9th

Cir. 2008) (quoting Gillibeau v. City of Richmond, 417 F.2d 426, 431 (9th Cir. 1969); Simmons v. Abruzzo, 49 F.3d 83, 86 (2d Cir. 1995) (stating that a district court has the power to sua sponte dismiss a complaint for failure to comply with Rule 8 where the complaint is so confused, ambiguous, or unintelligible that its true substance is well disguised); see also McHenry v. Renne, 84 F.3d 1172, 1180 (9th Cir. 1996) ("Something labeled a complaint but written . . . , prolix in evidentiary detail, yet without simplicity, conciseness and clarity as to whom plaintiffs are suing for what wrongs, fails to perform the essential functions of a complaint."); Nevijel v. N. Coast Life Ins. Co., 651 F.2d 671, 673 (9th Cir. 1981) ("A complaint which fails to comply with [Rule 8] may be dismissed with prejudice[.]").

Put slightly differently, a district court may dismiss a complaint for failure to comply with Rule 8 where it fails to provide the defendants fair notice of the wrongs they have allegedly committed. See McHenry, 84 F.3d at 1178–80 (affirming dismissal of complaint where "one cannot determine from the complaint who is being sued, for what relief, and on what theory, with enough detail to guide discovery"); cf. Mendiondo v. Centinela Hosp. Med. Ctr., 521 F.3d 1097, 1105 n.4 (9th Cir. 2008) (finding dismissal under Rule 8 was in error where "the complaint provide[d] fair notice of the wrongs allegedly committed by defendants and [did]

8

not qualify as overly verbose, confusing, or rambling"). Rule 8 requires more than "the-defendant-unlawfully-harmed-me accusation[s]" and "[a] pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (citations and quotations omitted). "The propriety of dismissal for failure to comply with Rule 8 does not depend on whether the complaint is wholly without merit." McHenry, 84 F.3d at 1179.

The court may "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." Iqbal, 129 S. Ct. at 1950. Legal conclusions must be supported by factual allegations. Id. "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Id.

DISCUSSION

I. Count I: Slander of Title

In Count I, Plaintiffs allege a claim for slander of title against BAC, MERS, and Does 2 through 5 on the ground that they recorded an Assignment that was allegedly "false and cast doubt upon Plaintiffs' title to the Subject Property." (SAC ¶ 47–48.) Plaintiffs assert that the Assignment of Mortgage to BAC was

false because it "implied that MERS had authority to assign the Mortgage and Note when . . . MERS did not have such authority, and [] it gave the false impression that MERS assigned valid interests in the Subject Property to BAC, when it did not."

As a preliminary matter, the Court notes that the allegations in Count I relate to the alleged invalidity of an Assignment to which Plaintiffs are not parties. In Hawaii, "[g]enerally 'third parties do not have enforceable contract rights. The exception to the general rule involves <u>intended</u> third party beneficiaries.'" <u>Ass'n of Apartment Owners of Newton Meadows v. Venture 15, Inc.</u>, 167 P.3d 225, 262 (Haw. 2007) (citing <u>Pancakes of Haw., Inc. v. Pomare Props. Corp.</u>, 944 P.2d 97, 106 (Haw. App. 1997)). "A third party beneficiary is one for whose benefit a promise is made in contract but who is not a party to the contract." <u>Id.</u> (internal citations and quotations omitted). Absent an enforceable contract right, a party lacks standing to challenge the validity of the contract. <u>See id.</u>; <u>Samsel v. Allstate Ins. Co.</u>, 19 P.3d 621, 625 (Ariz. App. 2001) ("For a third party to maintain an action on a contract, the contract must have been entered into for the express benefit of the third party; the party cannot be merely an incidental beneficiary.") (citations omitted); <u>Palmer v. Bahm</u>, 128 P.3d 1031, 1043 (Mont. 2006) (similar).

Here, Plaintiffs do not allege that they are parties to the Assignment, nor can they demonstrate otherwise.  See SAC, Ex. B (Assignment listing MERS as assignor and BAC as assignee).  Similarly, Plaintiffs have not alleged, nor can they prove, that they are intended beneficiaries of the Assignment.  Thus, as strangers to the Assignment and without any evidence or reason to believe that they are intended beneficiaries of that contract, Plaintiffs may not dispute the validity of the Assignment.  See Livonia Property Holdings, L.L.C. v. 12840-12976 Farmington Road Holdings, LLC, 717 F. Supp. 2d 724, 737 (E.D. Mich. 2010) (holding that a plaintiff who was not and is not a party to any assignments or Pooling and Servicing Agreement at issue "lacks standing to challenge their validity or the parties' compliance with those contracts.").[3]

Moreover, Plaintiffs have failed to establish the required elements of a slander of title claim.  Slander of title is "a tortious injury to property resulting from unprivileged, false, malicious publication of disparaging statements regarding the title to property owned by plaintiff, to plaintiff's damage."  Southcott v. Pioneer Title Co.,  21 Cal. Rptr. 917, 919 (Cal. App. 1962) (citations omitted).  "To establish slander of title at common law, a plaintiff must show falsity, malice,

---

[3]Further, "the validity of the assignment[] does not effect whether [Plaintiffs] owe[] its obligations, but only to whom [Plaintiffs are] obligated."  Livonia, 717 F. Supp. 2d at 737.

and special damages, i.e., that the defendant maliciously published false statements that disparaged a plaintiff's right in property, causing special damages." B & B Inv. Group v. Gitler, 581 N.W.2d 17, 20 (Mich. App. 1998); see also Manhattan Loft, LLC v. Mercury Liquors, Inc., 93 Cal. Rptr. 3d 457, 464 (Cal. App. 2009) (establishing elements as "(1) a publication, (2) which is without privilege or justification, (3) which is false, and (4) which causes direct and immediate pecuniary loss.").

Plaintiffs allege that the Assignment is false or invalid because: (1) the Assignment purports to transfer the rights of Security in the Mortgage, and not the rights of MERS (SAC ¶¶ 26–31); (2) MERS, as nominee for Security, lacked the authority to assign the Mortgage (SAC ¶¶ 32–35); (3) MERS had nothing to convey because Security sold the Mortgage before the Assignment was made (SAC ¶¶ 39–40); and (4) the signatory, Mary Kay, lacked the authority to act on behalf of MERS because she was not validly appointed Vice President of MERS (SAC ¶¶ 36–38). None of these allegations establish that the Assignment was false or otherwise invalid.

First, Plaintiffs' assertion that the Assignment is false because it attempts to transfer Security's rights in the Mortgage and not MERS' rights is contrary to the plain language of the Assignment itself. As this Court recognized

in its Order Granting Defendants' Motion to Dismiss the FAC (Doc. # 44), the

Assignment makes clear that MERS transferred to BAC <u>only</u> its own limited right,

title, and interest in the Mortgage as "nominee" for Security:

> [MERS], solely as nominee for [Security] . . . does hereby transfer
> without recourse to BAC . . . all of its [MERS'] right, title and interest
> in and to that certain mortgage . . . .

(SAC, Ex. B.)  MERS did not transfer Security's interest in the underlying debt or

Mortgage, but merely transferred its own limited rights in the Mortgage.

Importantly, MERS' rights included "the right to foreclose and sell the Property."

(SAC, Ex. A at 3.)  Accordingly, MERS assigned to BAC the right to foreclose

upon and sell the Subject Property on behalf of the lender in the event of a default.

There is nothing illegal or unlawful about such an arrangement.

Plaintiffs next contend that the Assignment was false because (1)

MERS lacked the authority to assign the Mortgage, and (2) MERS had nothing to

convey because Security sold the Mortgage before the Assignment was made.

(SAC ¶¶ 32–35, 39–40.)  These arguments are premised on Plaintiffs' assertion

that MERS transferred to BAC the lender's interest in the Mortgage.  As

discussed above, the express terms of the Assignment belies that contention.

Further, Plaintiffs fail to allege any facts demonstrating that MERS did not have

the right to transfer its own limited interest in the Mortgage.  In short, the facts as

alleged in the SAC and the documents attached to the SAC do not support

Plaintiffs' contention that MERS had nothing to convey to BAC.  The Court

therefore finds that this unsubstantiated allegation does not demonstrate the falsity

of the Assignment.

                In its Opposition to BAC, BOA, and MERS' Motion to Dismiss,

Plaintiffs argue that "[w]hile MERS may have had authority to act for Security in

executing the Assignment, in the absence of another writing creating a separate

agency relationship, it could not act for some <u>other</u> party once Security sold its

interest in the Mortgage."  (Opp'n at 8–9.)  Even assuming that Security sold its

interest in the Mortgage before the Assignment was executed, this allegation fails

to demonstrate the falsity of the Assignment for several reasons.  First, the

Mortgage signed by the Plaintiffs clearly grants MERS the authority to act on

behalf of Security and its successors and assigns.  (<u>See</u> SAC, Ex. A ([MERS] is a

separate corporation that is acting solely as nominee for Lender <u>and Lender's</u>

<u>successors and assigns</u>.") (emphasis added).)  Second, Plaintiffs do not allege any

facts in the SAC to support their contention that MERS lacks the authority to act

for subsequent assignees despite the plain language of the Mortgage.  Plaintiffs'

bald assertion, without more, is insufficient to satisfy the pleading requirements of

Rule 8.  <u>See</u> <u>Iqbal</u>, 129 S. Ct. at 1949 (stating that a complaint that "tenders naked

assertions devoid of further factual enhancement" is insufficient to satisfy Rule 8).

Third, as discussed above, the Assignment only transferred to BAC MERS' limited interest in the Mortgage and not any ownership interest in the underlying debt or Mortgage belonging to Security or its assignee. Plaintiffs fail to explain how any purported change in the owner of the Mortgage affects the validity of MERS' assignment of its limited interest to BAC. Accordingly, this argument does not establish that the Assignment was false or otherwise invalid.

Plaintiffs also allege, on information and belief, that "Mary Kay, who executed the Assignment as Assistant Secretary of MERS, has never been appointed Assistant Secretary by a resolution of MERS' Board of Directors" and therefore lacked the authority to make the Assignment on behalf of MERS. (SAC ¶¶ 36–38.) Plaintiffs once again fail to allege specific facts to substantiate their conclusory allegations.[4] See Iqbal, 129 S. Ct. at 1949 ("[A Complaint] demands more than an unadorned, the defendant-unlawfully-harmed-me accusation."); Twombly, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level."). This unadorned, conclusory allegation is not sufficient to establish the falsity of the Assignment.

---

[4]Plaintiffs appear to acknowledge that they have not adequately supported their allegations regarding Mary Kist and request leave to amend to supplement the record with respect to this contention. (See Opp'n at 9.)

Lastly, Plaintiffs' slander of title claim also fails for lack of sufficient factual allegations demonstrating that Defendants acted with malice. Plaintiffs contend that MERS and BAC either knew that the Assignment was false, or knew that there were questions as to the validity of the assignment, and yet recorded it anyway. (SAC ¶¶ 49–50.) Plaintiffs further contend that BAC and MERS recorded the Assignment "in an attempt to preserve the fiction that the Trust [to whom Security purportedly sold the Note and Mortgage] was fully funded." (SAC ¶ 54.) However, the SAC is completely devoid of specific factual allegations to support these contentions. In any event, as set forth above, Plaintiffs have failed to allege facts showing that the Assignment was false. It therefore cannot be that Plaintiffs have sufficiently alleged that Defendants knew or had reason to believe that the Assignment was false.

In sum, Plaintiffs have failed to state a claim for relief in Count I of the SAC. Specifically, Plaintiffs do not have standing to challenge the validity of the terms of the Assignment since they were neither parties nor intended third-party beneficiaries to that contract. Moreover, Plaintiffs have failed to allege sufficient facts demonstrating that the Assignment was false or that MERS and

BAC acted with malice. Accordingly, the Court **GRANTS** BAC, BOA, and MERS' Motion to Dismiss Count I of the SAC.[5]

II.     Count II: Conspiracy to Slander Title

        Count II alleges a claim against all the Defendants for conspiracy to slander title. (SAC ¶¶ 55–63.) This claim is based on the allegation that "BAC, MERS, and DOES 2–5 recorded the false assignment" and "the remaining Defendants kept silent about [their] actions, when they knew or should have known of the irregularities." (Id. ¶ 59.)

        Hawaii does not recognize an independent cause of action for "civil conspiracy"—such theories of potential liability are derivative of other wrongs.[6] See, e.g., Weinberg v. Mauch, 890 P.2d 277, 286 (Haw. 1995); Chung v. McCabe Hamilton & Renny Co., 128 P.3d 833, 843 (Haw. 2006). As explained above,

---

[5]Security asserts in its Motion to Dismiss that Count I should be dismissed as against Security because it is not one of the defendants against whom Plaintiffs assert a slander of title claim. It is self-evident that this Court need not dismiss Count I as against Security since Count I is not alleged against Security.

[6]In Opposition, Plaintiffs acknowledge this and rely on their allegations of slander of title to support their conspiracy claim. (Opp'n at 11.) As discussed, however, the conspiracy count nevertheless fails to state a claim for relief.

Plaintiffs have failed to allege an underlying tort for slander of title. It necessarily follows that Plaintiffs' conspiracy claim premised on that underlying tort also fails.

Moreover, the additional allegations in support of the conspiracy claim are conclusory. For example, plaintiffs allege that each of the Defendants "became aware of irregularities in the process that created the Trust that called into question the validity of the Trust and the REMIC to which it applied." (SAC ¶ 56.) There is no explanation as to what specific irregularities each of the Defendants allegedly became aware of or how they became aware of such irregularities. Plaintiffs further allege that:

> Defendants agreed among and between themselves that they would perform one or more of the following acts, as necessary: execute documents necessary to give the impression that the Trust had title to the mortgages when it did not; remain silent when such documents were created or recorded; and refrain from alerting investors or governmental authorities to the defects in the Trust or titles to the mortgages in the Trust. . . . Defendants agreed to engage, and did engage in the above described acts in furtherance of their agreement . . . .

(Id. ¶ 58.) This is precisely the sort of "formulaic recitation of the elements of a cause of action" that the Supreme Court has cautioned against. See Twombly, 550 U.S. at 557; Iqbal, 129 S. Ct. at 1950–51. Plaintiffs do not offer specific facts to substantiate their contention that Defendants entered into this purported agreement

to execute false documents and remain silent about it.  See Twombly, 550 U.S. at 586 (stating that a plaintiff must include enough facts to raise a reasonable expectation that discovery will reveal evidence and may not just provide a speculation of a right to relief); see also Iqbal 29 S. Ct. at 1949 (stating that Rule 8 requires more than "the-defendant-unlawfully-harmed-me accusation[s]").  These allegations, without more, are simply insufficient to state a claim for conspiracy.

Accordingly, the Court **GRANTS** Defendants' Motions to Dismiss Count II of the SAC.

III.    Count III: Unfair or Deceptive Acts and Practices

In Count III, Plaintiffs allege that all of the Defendants engaged in unfair or deceptive acts and practices ("UDAP") in violation of HRS § 481A-3(a)(12).[7]  (SAC ¶¶ 64–72.)  Specifically, Plaintiffs allege that:

> [t]he acts of Defendants in executing, recording, and conspiring to execute and record a document that cast doubt on Plaintiffs' title . . . , are deceptive, in that they would tend to lead the public to believe that BAC had an interest in the Subject Property when it did not . . . .

(SAC ¶ 68.)  Based on these allegations, Plaintiffs seek a permanent injunction enjoining Defendants from prosecuting any foreclosure action based on "a claim or right to possession stemming from the Assignment."  (SAC ¶ 72.)

---

[7]Plaintiffs inadvertently cite to HRS § 481A-3(12) in the SAC but it appears they intended to refer to HRS § 481A-3(a)(12).

HRS § 481A-3(a) enumerates conduct that constitutes deceptive trade practices and contains a catchall clause in § 481A-3(a)(12), which prohibits "any other conduct which similarly creates a likelihood of confusion or of misunderstanding." Haw. Rev. Stat. § 481A-3(a)(12). Plaintiffs' UDAP claim is premised on their contention that the Assignment was false and that BAC has no interest in the Subject Property. (See SAC ¶ 68.) As set forth above, Plaintiffs have failed to allege facts to establish that the Assignment was false. Moreover, contrary to Plaintiffs' contention, the express terms of the Mortgage and the Assignment suggest that MERS transferred to BAC its "right to foreclose and sell the Property." (SAC, Ex. A at 3; Ex. B at 1.) Therefore, Plaintiffs' UDAP claim based on the recording of an allegedly false Assignment fails to state a valid claim for relief. The Court thus **GRANTS** Defendants' Motions to Dismiss Count III of the SAC.

IV.   Count IV: Breach of Contract

Count IV alleges a breach of contract claim against Does 1 and 6. Specifically, Plaintiffs allege that Security sold the Mortgage and Note to a third party ("Doe 1"), who in turn sold the Mortgage and Note to an unidentified trust ("Doe 6") pursuant to a Pooling and Service Agreement ("PSA"). (SAC ¶ 16.) Plaintiffs further allege that Doe 1 breached the PSA by failing to convey the

Mortgage and Note to Doe 1 by the closing date, and that Doe 6 breached the PSA by acknowledging receipt of the Mortgage and Note when it had not in fact received them.  (SAC ¶¶ 75–76.)  Plaintiffs claim that the alleged breach of the PSA "cast doubt as to the ownership of Plaintiffs' Mortgage" and deprived Plaintiffs "of their expectancy that any action to foreclose would be undertaken by the person or persons lawfully entitled to foreclose pursuant to the PSA."  (SAC ¶ 78.)

As a preliminary matter, the Court observes that all of the named Defendants have moved to dismiss this breach of contract claim.  However, since this claim is not asserted against any of the named Defendants, none of them have standing to challenge this cause of action.  Nevertheless, the Court <u>sua sponte</u> dismisses this Count as against all defendants for the reasons that follow.

First, Plaintiffs fail to allege sufficient facts to establish that they have standing to assert this breach of contract claim as a third party beneficiary of the PSA.  "A third party beneficiary is one for whose benefit a promise is made in contract but who is not a party to the contract."  <u>Newton Meadows</u>, 167 P.3d at 262 (internal quotation and citation omitted).  "[A] prime requisite to the status of third party beneficiary under a contract is that the parties to the contract must have

intended to benefit the third party, who must be something more than a mere incidental beneficiary." Id. (internal quotation and citation omitted).

Here, Plaintiffs claim they are third party beneficiaries of the PSA because:

> they would not have qualified for a loan under conventional standards for fixed-rate prime mortgages and obtained the loan only because [the lender] intended to sell the Mortgage and Note to the Trust, and would be free of the attendant increased risk that the loan carried.

(SAC ¶¶ 22–25.) These conclusory allegations do not establish that Plaintiffs were the beneficiaries of the PSA, much less intended beneficiaries. Specifically, Plaintiffs fail to offer specific factual allegations to support their contention that they would not have otherwise qualified for the loan or that the only reason they were able to obtain the loan was because the lender intended to sell the Mortgage and the Note. See Twombly, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level.") Further, Plaintiffs do not allege any facts to show that the contracting parties, that is, Does 1 and 6, intended to benefit the Plaintiffs in entering the PSA. Plaintiffs contend that the purported benefit they received was a loan that they otherwise would not have qualified for. It is unclear how the contracting parties could have intended to confer this benefit upon Plaintiffs when they entered the PSA, particularly since the Plaintiffs had

already received the loan before the parties allegedly entered the PSA.

Accordingly, Plaintiffs have failed to allege sufficient facts to demonstrate that

they are third party beneficiaries of the PSA.

Moreover, even assuming Plaintiffs have standing to assert this cause

of action, the allegations in Count IV are not sufficient to state a breach of contract

claim.  Specifically, Plaintiffs do not identify the particular PSA at issue, nor do

they specify the particular provisions of the PSA that were allegedly violated.  For

example, Plaintiffs allege that Doe 6 "breached the PSA when it acknowledged

receipt of the Mortgage and note when it had not in fact received them."  (SAC

¶ 76.)  There is no explanation as to how Doe 6 "acknowledged receipt" of those

documents and why this constitutes a breach of the PSA.  See Otani v. State Farm

Fire & Caves. Co., 927 F. Supp. 1330, 1335 (D. Haw. 1996) ("In breach of

contract actions, [ ] the complaint must, at minimum, cite the contractual provision

allegedly violated. Generalized allegations of a contractual breach are not

sufficient.").  These type of vague and conclusory allegations fail to satisfy the

pleading requirements of Rule 8.  See Iqbal 29 S. Ct. at 1949 (stating that Rule 8

requires more than "the-defendant-unlawfully-harmed-me accusation[s]" and "[a]

pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do").

Accordingly, the Court dismisses <u>sua sponte</u> Count IV of the SAC.

V.    <u>Cervantes v. Countrywide Home Loans, Inc.</u>

In addition to failing to sufficiently allege the causes of actions as outlined <u>supra</u>, the Court has grave doubts about the validity of the factual predicate underlying most, if not all, of Plaintiffs' claims in light of <u>Cervantes v. Countrywide Home Loans, Inc.</u>, ---F.3d---, 2011 WL 3911031 (9th Cir. Sept. 7, 2011), a Ninth Circuit decision issued after the parties fully briefed the instant Motions to Dismiss.  In <u>Cervantes</u>, the plaintiffs argued that they could amend their complaint to illustrate that certain "aspects of the MERS system are fraudulent." <u>Id.</u> at *1.  The Ninth Circuit disagreed.

The Ninth Circuit first outlined how the MERS system functions.  (<u>Id.</u> at *1–2.)  The court next described plaintiffs' theory of the case as follows:

> One of the main premises of the plaintiffs' lawsuit here is that the MERS system impermissibly "splits" the note and deed by facilitating the transfer of the beneficial interest in the loan among lenders while maintaining MERS as the nominal holder of the deed.
>     The plaintiffs' lawsuit is also premised on the fact that MERS does not have a financial interest in the loans, which, according to plaintiffs, renders MERS's status as a beneficiary a sham.  MERS is not involved in originating the loan, does not have any right to payments on the loan, and does not service the loan.  MERS relies on

24

its members to have someone on their own staff become a MERS
officer with the authority to sign documents on behalf of
MERS . . . As a result, most of the actions taken in MERS's own
name are carried out by staff at the companies that sell and buy the
beneficial interest in the loans.

Id. at *2.  Ultimately the Ninth Circuit rejected plaintiffs' arguments.  The court

first found that plaintiffs had "not identified any representations made to them

about the MERS system and its role in their home loans that were false and

material."  Id. at *4.  Nor did the plaintiffs allege with specificity that they "were

misinformed about MERS's role as a beneficiary, or the possibility that their loans

would be resold and tracked through the MERS system."  Id.  The plaintiffs also

"failed to show that the designation of MERS as a beneficiary caused them any

injury by, for example, affecting the terms of their loans, their ability to repay the

loans, or their obligations as borrowers."  Id.

Moreover, the Ninth Circuit also found that plaintiffs' claims were

undercut by the terms in [the] standard deed of trust, which describe
MERS's role in the homeloan.  For example the plaintiffs allege they
were defrauded because MERS is a "sham" beneficiary without a
financial interest in the loan, yet the disclosures in the deed indicate
that MERS is acting "solely as nominee for Lender and Lender's
successors and assigns" and holds "only legal title to the interest
granted by Borrower in this Security Instrument."  Further, while the
plaintiffs indicate that MERS was used to hide who owned the loan,
the deed states that the loan or a partial interest in it "can be sold one
or more times without prior notice to Borrower," but that "[i]f there is
a change in Loan Servicer, Borrower will be given written notice of

the change" as required by consumer protection laws.  Finally, the deed indicates that MERS has "the right to foreclose and sell the property."  By signing the deeds of trust, the plaintiffs agreed to the terms and were on notice of the contents. . . . In light of the explicit terms of the standard deed signed by [plaintiffs] it does not appear that the plaintiffs were misinformed about MERS's role in their home loans.

Id. at *5.  Thus, far from concluding that MERS was some sort of sham organization, the Ninth Circuit concluded that MERS was a legitimate organization and that the mortgage which plaintiffs signed put them on notice of the role MERS was to play in their home loans.

The Mortgage at issue in the instant case contains identical language to the mortgage at issue in Cervantes.  Specifically, the Mortgage put Plaintiffs on notice that MERS had "the right to foreclose and sell the property."  (SAC, Ex. A at 3.)  The Mortgage also provided that MERS was "acting solely as a nominee for Lender and Lender's successors and assigns."  (SAC, Ex. A at 1.)  Plaintiffs were aware of the MERS' role, as they signed the Mortgage.  (Id. at 14.)  See Cervantes. 2011 WL 3911031, at *5 ("In light of the explicit terms of the standard deed signed by [plaintiffs], it does not appear that the plaintiffs were misinformed about MERS's role in their home loans.").  Thus, any argument that MERS lacked the

authority to assign its right to foreclose and sell the property based on its status as "nominee" cannot stand in light of <u>Cervantes</u>.

VI.   <u>Dismissal With Prejudice</u>

Pursuant to Rule 15(a)(2), courts should "freely give leave [to amend] when justice so requires."  Further, "requests for leave should be granted with extreme liberality."  <u>Moss v. U.S. Secret Service</u>, 572 F.3d 962, 792 (9th Cir. 2009).  "Dismissal without leave to amend is improper unless it is clear . . . that the complaint could not be saved by an amendment."  <u>Id.</u>  "However, 'liberality in granting leave to amend is subject to several limitations.'"  <u>Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys.</u>, 637 F.3d 1047, 1058 (9th Cir. 2011) (quoting <u>Ascon Props., Inc. v. Mobil Oil Co.</u>, 866 F.2d 1149, 1160 (9th Cir. 1989)).  "Those limitations include undue prejudice to the opposing party, bad faith by the movant, futility, and undue delay."  <u>Id.</u> (citing <u>Ascon Props</u>, 866 F.2d at 1160).  "Further, '[t]he district court's discretion to deny leave to amend is particularly broad where plaintiff has previously amended the complaint.'"  <u>Id.</u>  (quoting <u>Ascon Props</u>, 866 F.2d at 1160).

Here, as alluded to above, <u>Cervantes</u> precludes most, if not all, of Plaintiffs' causes of action.  Specifically, Plaintiffs' Complaint centers around

their assertion that the Assignment from MERS to BAC was invalid.  However, as in <u>Cervantes</u>, Plaintiffs were on complete notice of the role that MERS was to play in connection with their Mortgage.  Further, MERS transferred to BAC nothing more than its limited interest in the Mortgage.

Moreover, unlike <u>pro se</u> litigants, Plaintiffs were represented by an attorney throughout these proceedings.  They have had more than ample opportunity to provide the Court with allegations sufficient to withstand a motion to dismiss.  Indeed, in this Court's prior Order Granting Defendants' Motion to Dismiss the FAC, the Court provided Plaintiffs substantial guidance on how to cure their pleading deficiencies.  (Doc. # 44.)  Nevertheless, Plaintiffs have failed to address those deficiencies.

Accordingly, the Court concludes that there would be no benefit in providing Plaintiffs leave to amend their Complaint a third time.

<u>CONCLUSION</u>

For the reasons stated above, the Court **GRANTS** Defendants'

Motions to Dismiss and **DISMISSES WITH PREJUDICE** Plaintiffs' Second

Amended Complaint.  The Clerk of the Court is hereby directed to close this case.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, October 14, 2011.

_____
David Alan Ezra
United States District Judge


<u>Velasco, et al. v. Security National Mortgage. Co., et al.</u>, CV No. 10-00239 DAE-
KSC; ORDER: (1) GRANTING DEFENDANTS' MOTIONS TO DISMISS; AND
(2) DISMISSING WITH PREJUDICE PLAINTIFFS' SECOND AMENDED
COMPLAINT